■ In the Matter of PENNY SINDONI, Petitioner, v COUNTY OF TIOGA et al., Respondents. [889 NYS2d 285]—

Stein, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Tioga County) to review a determination of respondent County of Tioga which terminated petitioner's employment.

Petitioner, a senior typist for respondent County of Tioga (hereinafter respondent), was suspended and charged with misconduct and incompetence in accordance with Civil Service Law § 75. The charges against petitioner included creating a "hostile, intimidating, disruptive, uncomfortable or some or all of the above, work environment" and her alleged violation of respondent's Policy 53,* all allegedly stemming from her animosity towards another employee (hereinafter the coworker), and the formation of a club known as the "I Hate Teena Club," referring to the coworker. Following a hearing pursuant to Civil Service Law § 75, a Hearing Officer found that petitioner was a central player in the "I Hate Teena Club," wore a ribbon to demonstrate membership in this club and made threatening and intimidating comments to other coworkers who informed the administration of the existence of such club. Upon the Hearing Officer's recommendation, respondent terminated petitioner's employment. Petitioner then commenced this proceeding in Supreme Court, seeking reinstatement to her position, and the proceeding was transferred to this Court pursuant to CPLR 7804.

In our view, the Hearing Officer's findings with regard to the six specifications of which petitioner was found guilty were supported by substantial evidence. The first specification alleges that petitioner and the coworker were engaged in a "loud verbal exchange" that was disruptive to the work place. Despite petitioner's allegations that the altercation was not her fault, petitioner admitted that she had participated in such an

---

* Policy 53 requires all employees to "maintain a work environment free from violence, threats of harassment, intimidation or coercion," as well as disruption. It also prohibits "[a]ny verbal or physical conduct that has the purpose or effect of substantially interfering with the employee's ability to do his or her job."

exchange. Petitioner also admitted the factual allegations of other charges, such as keeping a calendar of the coworker's late arrivals and early departures from work, being a member of a group that became known as the "I Hate Teena Club" and wearing a ribbon. While petitioner claims that she wore the ribbon merely to show her support of two colleagues who were supervised by the coworker and that she never asked anyone to join the group, other witnesses testified that it was well known that the ribbon symbolized membership in the "I Hate Teena Club," that petitioner was aware of the representation and that she attempted to recruit others to join. There is also record evidence that petitioner solicited assistance in monitoring the coworker's activities.

The two most serious charges of misconduct involved allegations that petitioner had made threatening comments to certain coworkers. These individuals testified that they were concerned about their physical safety and the safety of their personal property as a result of speaking out against petitioner. Other employees testified that petitioner was known to be vindictive and had made threats of retaliation if anyone spoke out.

Although there is evidence that could support a different result from that reached by the Hearing Officer, this Court may not substitute its own judgment for that of the Hearing Officer and, to the extent that conflicting versions of the dispute exist, we defer to the Hearing Officer's credibility determinations (see *Matter of Longton v Village of Corinth*, 57 AD3d 1273, 1274 [2008], *lv denied* 13 NY3d 709 [2009]; *Matter of Clarke v Cleveland*, 53 AD3d 894, 896 [2008]; *Matter of Peters v County of Rensselaer*, 28 AD3d 854, 854 [2006]; *Matter of Rounds v Town of Vestal*, 15 AD3d 819, 822 [2005]). Our review of the record reveals sufficient evidence of petitioner's misconduct to support the Hearing Officer's determination sustaining the relevant charges against her (see CPLR 7803 [4]; *Matter of Mapp v Burnham*, 8 NY3d 999, 1000 [2007]; *Matter of Perryman v Village of Saranac Lake*, 64 AD3d 830, 833-834 [2009]).

Nor do we find merit to petitioner's argument that the penalty of termination was excessive. A penalty will be disturbed only if it is "so disproportionate as to be shocking to one's sense of fairness" (*Matter of Collins v Parishville-Hopkinton Cent. School Dist.*, 274 AD2d 732, 734, [2000]; *see Matter of Bottari v Saratoga Springs City School Dist.*, 3 AD3d 832, 833 [2004]; *accord Matter of Longton v Village of Corinth*, 57 AD3d at 1275). Here, the Hearing Officer specifically distinguished petitioner from the other participants in the activities constituting the

misconduct and recommended petitioner's dismissal, in part, because she was "the only employee who made threats to the person or property of others." The Hearing Officer also determined that petitioner was the main player in the hate club and noted that she had not expressed any remorse regarding her conduct. Irrespective of her "excellent" work record and 11 years of service, "petitioner's poor judgment and lack of remorse, the disturbing nature of her comments . . . and [respondent's] strict policy concerns regarding threats of violence" warrant her termination (*Matter of Bottari v Saratoga Springs City School Dist.*, 3 AD3d at 833; *see Matter of Wagner v Roth*, 9 AD3d 583, 585 [2004]).

Rose, J.P., McCarthy and Garry, JJ., concur. Adjudged, that the determination is confirmed, without costs, and petition dismissed.